**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **NO. 1:11-CR-096** |
| | : | |
| **v.** | : | **(Judge Caldwell)** |
| | : | |
| **REBECCA STRAUSBAUGH** | : | **(ELECTRONICALLY FILED)** |

**SENTENCING MEMORANDUM**
**OF BEHALF OF REBECCA STRAUSBAUGH**

AND NOW, this 4th day of May, 2012, by and through her court-appointed counsel, Terrence J. McGowan, Esquire, comes Defendant, Rebecca Strausbaugh ("Rebecca"), and respectfully requests this Honorable Court to grant the relief requested, and in furtherance thereof submits this Sentencing Memorandum pursuant to pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005), this Honorable Court's Order setting sentencing for May 8, 2012, and 18 U.S.C. §3553(a).

**I.     PROCEDURAL HISTORY AND BRIEF STATEMENT OF FACTS**

    **A.     Procedural History.**

A criminal complaint was filed against Rebecca on March 18, 2011. (Doc. 1).  An Order of Detention pending trial as to Rebecca was entered on March 18, 2011.  (Doc. 7).  On March 23, 2011, a three-count Indictment was filed

against Rebecca and her husband, co-defendant Michael Strausbaugh.  (Doc. 9).
Rebecca was charged in Count 1 with Sexual Exploitation of a Child in violation
of Title 18 U.S.C. §2251 (a).  (Doc. 9).  Rebecca was not charged in Counts 2 and
3.  At her preliminary hearing on March 23, 2011, Rebecca entered a plea of not
guilty to Count 1 of the Indictment.  (Doc. 16).  Rebecca's case was assigned to
the Honorable William W. Caldwell.  On April 7, 2011, Terrence J. McGowan,
Esquire was Court appointed to represent Rebecca.  (Doc. 25).  A five-count
Superseding Indictment was filed on May 4, 2011.  Rebecca was charged with
three Counts of Sexual Exploitation of a Child in violation of 18 U.S.C §§2251 (a)
and (e) and 18 U.S.C. §2 (Counts 1, 4, and 5).  (Doc. 29).  The Superseding
Indictment also contained a Forfeiture Allegation pursuant to 18 U.S.C. § 2253
and additional charges against co-defendant Michael Strausbaugh.

The Government filed a *Lis Pendens* against the real property owned by
Rebecca and Michael Strausbaugh in Adams County, Pennsylvania on May 9,
2011.  (Doc. 32).  Rebecca entered a not guilty plea as to Counts 1, 4 and 5 of the
Superseding Indictment on May 17, 2011.  (Doc. 43).  A Motion to Dismiss
Counts and Forfeiture Allegation was filed by Rebecca on June 16, 2011.  (Doc.
54).  On September 13, 2011, Judge Caldwell issued an Order denying Rebecca's
Motion to Dismiss.  (Doc. 91).  Rebecca waived her right to a jury trial on

September 20, 2011.  (Doc. 99).  The Government filed a *Motion in Limine* to

Preclude Evidence and Argument Relating to Battered Spouse Defense on

October 15, 2011.  (Doc. 106).  Rebecca timely filed a Brief in Opposition to the

Government's *Motion in Limine*.  (Doc. 107).  Judge Caldwell granted the

Government's *Motion in Limine* in part and denied it in part on October 20, 2011.

(Doc. 113).

    Following a bench trial held before the Honorable William W. Caldwell on

October 24, 2011, Rebecca was found guilty of Counts 1, 4 and 5 of the

Superseding Indictment, and the Court determined forfeiture was limited to "any

visual depiction described in 18 U.S.C. §2551, 2251A, or 2252, or any book,

magazine, periodical, film, videotape, or other matter which contains any such

visual depiction, which was produced, transported, mailed, shipped or received in

violation of Title 18, United States Code, Chapter 10; and the camera, computers,

and hard drives associated with the offense."

    On November 17, 2011, the *Lis Pendens* against the Adams County real

property was released.  The Probation Office's Presentence Report is dated

January 25, 2012.  On February 10, 2012, Rebecca filed an Unopposed Motion for

Extension of Time to Respond to the Presentence Report.  (Doc. 135).  On

February 13, 2012, Judge Caldwell granted the extension.  Rebecca's objections to

numerous errors contained in the Presentence Report were filed on March 14, 2012.  This Sentencing Memorandum is filed in advance of sentencing in support of Rebecca's request for a non-guideline sentence based on the factors enumerated in 18 U.S.C. §3553(a), battered woman syndrome and because the Guidelines applicable to this offense are inflated and lack empirical support.

**B.     Brief Statement of the Facts**.

Rebecca Strausbaugh is charged with three counts of sexual exploitation of a child in violation of 18 U.S.C. §2251 (a) and (e) and 18 U.S.C. §2 with respect to photographs taken by her husband, Michael Strausbaugh of minor child A. H., who is Rebecca's niece.  Co-defendant Michael Strausbaugh is charged with the same three counts of sexual exploitation of a child and is additionally charged with one count of distribution of child pornography in violation of 18 U.S.C. §2252(a)(2) and (b) and one count of possession of child pornography in violation of 18 U.S.C. §2252A(a)(5)(B).  The Superseding Indictment filed on May 4, 2011 also includes a Forfeiture Allegation for the Strausbaughs' joint property located at 1946 East Berlin Road, New Oxford, Adams County, Pennsylvania.

Rebecca has, from the outset, contended that she suffers from Battered Wife Syndrome and was permitted to present evidence and argument at trial in support of her defense, including testimony (via a report) from Dr. Stanley Schneider, the

4

psychological expert who interviewed Rebecca and concluded that she displays classic symptoms of Battered Wife/Woman Syndrome.  During the course of her relationship and marriage to Co-Defendant Michael Strausbaugh, Rebecca was under the control of Michael, in fear of imminent bodily harm to both herself and their son, and felt helpless to remove herself from that abusive situation.  Rebecca has been incarcerated at the Adams County Prison since her arrest on March 18, 2011.

## II.    ARGUMENT

After *United States v. Booker*, 125 S. Ct. 738 (2005) and its progeny, courts are permitted to reject the advisory Sentencing Guidelines when they fail to properly reflect §3553 considerations.  "In the wake of *Booker*, it is essential that [for purposes of sentencing] district courts make an 'individualized assessment based on the facts presented.'"  *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597)).  This Sentencing Memorandum is submitted in support of Rebecca's request that this Honorable Court assess the facts of this case and exercise its discretion to disregard the advisory Sentencing Guidelines.

This Court's meaningful consideration of the §3553 (a) factors will lead to the conclusion that both a downward departure and a discretionary variance based upon history and personal characteristics, are appropriate.

### A.    In imposing a sentence, the District Court must undertake a three-step process.

"After *Booker*, a district court must undertake a three-step process in imposing a sentence:  (1) calculate the applicable Guidelines range, (2) formally rule on any departure motions, and (3) exercise its discretion in applying the factors set forth in 18 U.S.C. §3553(a)." *United States v. Grier*, 585 F.3d 138 (3d Cir. 2009).   In the instant matter, step one has been completed as set forth in the Presentence Report,  and the Probation Department has calculated the applicable Guidelines range to be between 151 and 188 months; with a statutory maximum penalty under 21 U.S.C.S. §841 of twenty years.  There are currently no departure motions before this Honorable Court other than the requests contained herein. Application of the § 3553 (a) factors fulfills step-three.

### B.    A non-guideline sentence is warranted pursuant to factors set forth in 18 U.S.C. §3553(a).

*Booker*, 125 S. Ct. 738 (2005) authorizes this Court to impose a sentence below the guideline range.  Under *Booker*, the Sentencing Guidelines are advisory. The Third Circuit has held that *Booker* requires District Courts to "give

6

meaningful consideration to the §3553(a) factors" when sentencing defendants under the advisory guidelines. *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006) (citing *Booker*, 125 S.Ct. at 764-65)). The *Cooper* Court further held that in addition to ensuring that a trial court considered the § 3553 (a) factors, the Court "must also ascertain whether those factors were reasonably applied to the circumstances of the case." *Cooper*, 437 F.3d at 330. The facts of the instant case, combined with the directives illustrated in 18 U.S.C. §3553(a) provide sufficient rationale in support of this Honorable Court's downward departure from the advisory Sentencing Guidelines.

**C.     Sentence is to be sufficient but not greater than necessary.**

The Court is required to impose a sentence *sufficient, but not greater than necessary*, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and assure correctional treatment, including medical care, for the defendant. 18 U.S.C.S §3553(a)(2) (*emphasis added*). In determining whether a sentence is sufficient, the Court is directed to consider the factors set forth in 18 U.S.C. §3553(a) including:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed; . . .

7

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for --

* * *

(5)     any pertinent policy statement–

* * *

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 USCS §3553(a).

*Booker* emphasized that under the Sentencing Reform Act, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *Booker*, 125 S. Ct. at 760 (quoting 18 U.S. §3661).  In the instant case, the advisory guideline sentence is greater than necessary to reflect the seriousness of Rebecca's offense, to promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. Rebecca asks this Honorable Court to consider the information contained herein regarding her history and characteristics and to impose a below-advisory guideline sentence.

### D.    History and Characteristics of the Defendant (18 U.S.C.S. § 3553 (a)(1).

Rebecca  was born on April 9, 1979.  She had a reasonably normal upbringing in a middle-income family.  However, while growing up, Rebecca suffered from low self-esteem, vulnerability, and has a long-standing poor self-image.  Growing up, Rebecca felt socially inept and found it difficult to make friends.  Rebecca was 20 years old before having her first boyfriend, and after having sex with him one time, he never talked to her again, further contributing to her lack of self-esteem.

Rebecca also reports that her relationship with her mother was sometimes difficult, and that her mother did not know "how to deal with me and my issues with other kids."  Rebecca also believes that she was subject to negative or hurtful behavior as a youngster.  Rebecca self-reports as a "big daddy's girl". Rebecca reported to Dr. Schneider that she suffers from depression, gullibility, and a belief that she cannot stand up for herself, that she never felt like she fit in, and that as an adolescent she was embarrassed and shameful.

She met co-defendant Michael Strausbaugh in 2000.  Rebecca and Michael have a minor son, Alexander, who was born in 2002.  Rebecca and Michael were married in 2003.  During the marriage, there was an ongoing pattern of Michael's

influencing and exercising his power and control over her. As part of his pattern of behavior, Michael exhibited a cycle of jealousy, possessiveness, sexual abuse, and a concerted effort and intent to isolate Rebecca from her family and friends. Rebecca feared for herself and her son such that she felt incapable of leaving Michael because of his threats of reprisal.

Michael belittled Rebecca, called her names like "stupid" and "bitch" and generally discounted her opinions, needs and preferences.  Rebecca relates that Michael's attitudes and abuse caused her to become isolated from her family and friends.  Rebecca could not stand up for herself, nor did she believe that she could safely walk away from her marriage.

Rebecca has no history of pornographic activity.  In the instant case, Rebecca related during interviews that she told Michael, "no" that she would not help with taking pictures, but that she could not stand up to him; could not stop him; and that Michael told her that "if he had to hide it from me, worse things would happen."

Michael also exerted financial and sexual control as part of the pattern of abuse.  Michael chose Rebecca's clothing and Rebecca had to ask permission from Michael before she would buy anything.  Rebecca reports that Michael would

force her to have sex even when she did not want to and that there "was no saying no" to Michael.

Michael has admitted his controlling behavior in his letters to Rebecca since their incarceration.  He stated that he  "had my attorney set my power of attorney so I could have control over our money; I would get really mad, I would yell and have a hard time stopping; and that "it wasn't something you wanted to do but did it because I mad (sic) you do these things."

Physical abuse was also part of the pattern of Michael's control.  On several occasions Michael hit her, causing bruising, and on at least one occasion pinned her against the wall to prevent her from leaving with their son.  Rebecca felt overwhelmingly vulnerable and intimated by Michael's threats that if she left him, something bad would happen.

Throughout the cycle and pattern of physical and psychological abuse, Rebecca felt powerless to say no to Michael's demands or to leave him.  Michael's behaviors toward Rebecca resulted in Michael keeping her under his control, submitting to his preferences and supporting his behavior.

**Employment History:**

While Rebecca was unemployed outside her home since 2009, she did help Michael with his diesel performance business from 2009 until the time of her

arrest on March 18, 2011.  She sometimes helped her husband in his lawn care

business back in 2002.  Rebecca also reported that she was fired from a day care

position because she reported the daycare as being over the child to teacher ratio.

This is true and as confirmation of same, she was fired three (3) days after she

reported her employer to the Department Of Public Welfare, who fined the daycare

for having over the child to teacher ratio violations.  Against her wishes, Michael

insisted that Rebecca take a job at an adult video establishment, International

Video, from October of 2002 until March of 2003.  In addition to having

experienced situational depression while incarcerated, Rebecca believes that she is

also suffering from post traumatic stress disorder as a result of this ordeal.

During her incarceration, Rebecca has been meeting with counselors and is

working to understand why she permitted Michael to exert such emotional,

physical and psychological control over her.  On February 7, 2012, Rebecca filed

for divorce from Michael, and Michael was served with the Divorce Complaint on

February 14, 2012.  Rebecca has also filed Chapter 7 bankruptcy in Pennsylvania

through a Hanover, Pennsylvania law firm.

### E.    Enhancement for Distribution does not apply to Rebecca

The Presentence Report contains a recommendation for a two-level

enhancement under *U.S.S.G. §2G2.1(b)(3)*.  That enhancement should not be

applied to Rebecca because she was not charged with Distribution of Child

Pornography, nor was she even aware that her husband had engaged in

Distribution of Child Pornography.

### F.    Battered Woman Syndrome

Despite the fact that this Honorable Court apparently did not find Rebecca's

defense as a battered wife sufficiently credible to arrive at a not guilty verdict, it is

nevertheless a proper ground for downward departure.  The Eighth Circuit, in

*United States v. Whitetail*, 956 F.2d 857 (8th Cir. 1992) looked to the Third

Circuit decision in *United States v. Cheape*, 889 F.2d 477 (3rd Cir. 1989) for

guidance in determining whether battered woman syndrome could be a

consideration in departing from the Sentencing Guidelines even if the jury did not

accept the syndrome as a defense.  The Third Circuit observed that "because a

successful claim of coercion or duress constitutes a complete defense, these

defenses could be relevant at sentencing only when they are not successful at

trial."  *Whitetail*, 956 F.2d at 863 (citing *Cheape*).

> [I]f the guideline provision specifically stating that
> downward departure may be made because of coercion
> or duress 'is to be accorded meaningful status . . . we
> must read it as providing a broader standard of coercion
> as a sentencing factor than coercion as required to prove
> a complete defense at trial.' The court also observed that
> coercion, as a complete defense at trial, involves proof of

substantially different elements than does coercion as a
sentencing factor.

*United States v. Whitetail*, 956 F.2d 857 (8th Cir. 1992) (citing *United States v.*

*Cheape*, 889 F.2d at 480 (3rd Cir. 1989)).

The United States District Court for the Eastern District of New York in

*United States v. Gaviria*, 804 F. Supp. 476 (E.D. NY 1992) stated:

> One person can cause another to commit a crime using
> three types of compulsion under circumstances where
> free will and mens rea are reduced.  First, *duress* is
> sufficient physical compulsion or its psychological
> equivalent to eliminate mens rea.  Second, physical
> *coercion* or its psychological equivalent can overcome
> much of a defendant's resistance, but leave enough
> freedom to support a finding of mens rea.  Third is a
> relationship of *subservience* in which the law assumes
> that the actor could avoid criminal acts.  The third
> category includes persons, often women, following the
> commands of another, often a male partner, because of a
> pattern of physical and psychological domination that
> develops over time.

*United States v. Gaviria*, 804 F. Supp. at 478.  Michael's pattern of physical and

psychological domination over Rebecca during the course of their marriage led to

exactly the type of subservience envisioned by the *Gaviria* court as grounds for

deviation from the Sentencing Guidelines.

It is Rebecca's subservience to Michael that Rebecca respectfully requests

this Court to consider in setting her sentence.

14

A defendant might not be able to show the sort of 'serious coercion . . . or duress' of which the Guidelines speak, yet still might establish a pattern of dependence that would be relevant to blameworthiness and her sentence.  A woman living in a relationship of complete subservience to a man deserves less punishment than the usual defendant when that man orders her to commit a crime and she obeys.  The man's control can result from a combination of physical and psychological abuse, cultural norms, economic dependence and other factors.

The Sentencing Guidelines fail to account for these endemic sociological and psychological realities. Nowhere in the Guidelines' formulaic mechanism is there room to consider how the facts of the life of a woman abused in this fashion should bear upon her sentence.

*Gaviria*, 804 F. Supp. at 479.

> **G.** **Probation Office "triple dipped" in calculating base offense by adding enhancements for vulnerability, relative status and age of victim.**

The Presentence Report contains recommendations for a four-level enhancement because the offense involved a minor who had not attained the age of twelve (12) years; an additional two-level enhancement because Rebecca is related to the victim; and an additional two-level enhancement because there was a vulnerable victim.  These multiple enhancements for the same predicate act amount to "triple dipping."  Where the same set of factors has been used to

enhance the sentencing level, it serves no legitimate purpose to pile on additional enhancements for the same behavior.

**H.    Child Pornography guidelines are inflated and lack empirical support**.

Recent cases in several circuits, including the Third Circuit in *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010), concluding that §2G2.2 was not developed pursuant to Commission's characteristic role, have held that sentencing guidelines for child pornography, particularly when applied to first time offenders, are based largely on congressional directives rather than empirical data.[1]  In the instant case, Rebecca was a subservient woman who feared for not only her own safety, but also that of her son, if she refused to do what Michael told her to do. The child pornography sentencing guidelines and the enhancements recommended by the Probation Department, would result in a sentence that is greater than necessary to punish Rebecca and deter similar behavior by others.

**H.    Obstruction of Justice.**

Section 3C1.1 of the Sentencing Guidelines provides as follows:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of

---

[1]*See* "Judges are free to disagree with any guideline, not just crack."  Amy Baron-Evans & Jennifer Coffin, revised November 7, 2011., http://www.fd.org/ pdf_lib/Free%20to%20Disagree%20with%20Any%20Guideline.pdf

justice during the investigation, prosecution, or
sentencing of the instant offense, increase the offense
level by 2 levels.

*U.S.S.G. §3C1.1.* "Most courts considering the above guideline have held that if

the court finds that the defendant gave false testimony at trial, an enhancement

under this section is appropriate." *United States v. McKean*, 835 F. Supp.

227, 230 (M.D. Pa. 1993).[2]

> Only the Court of Appeals for the Fourth Circuit has held
> that a sentencing enhancement for perjury at trial is
> inappropriate and unconstitutional. *See United States vs.
> Dunnigan,* 944 F.2d 178 (4th Cir. 1991). In that case the
> Court of Appeals found that an enhancement pursuant to
> U.S.S.G. §3C1.1 for a disbelieved denial of guilt under
> oath was unconstitutional in that it would create an
> "intolerable burden on the defendant's right to testify in
> his own behalf." *Id.* at 185. However, the Supreme Court
> granted the United States's petition for writ of certiorari

---

[2]*United States v. McKean*, 835 F. Supp. 227 (M.D. Pa. 1993) (citing *United
States vs. Batista-Polanco*, 927 F.2d 14, 22 (1st Cir. 1991); *United States vs.
Matos*, 907 F.2d 274, 276 (2d Cir. 1990); *United States vs. Colletti*, 984 F.2d
1339, 1347-48 (3d Cir. 1992); *United States vs. Acosta-Cazares*, 878 F.2d 945,
953 (6th Cir.), *cert. denied,* 493 U.S. 899, 107 L. Ed. 2d 204, 110 S. Ct. 255
(1989); *United States vs. Contreras*, 937 F.2d 1191, 1194-1195 (7th Cir. 1991);
*United States vs. Wagner*, 884 F.2d 1090, 1098-1099 (8th Cir. 1989), *cert. denied,*
494 U.S. 1088, 108 L. Ed. 2d 958, 110 S. Ct. 1829 (1990); *United States vs.
Barbosa,* 906 F.2d 1366, 1369-1370 (9th Cir.), *cert. denied,* 498 U.S. 961, 112 L.
Ed. 2d 403, 111 S. Ct. 394 (1990); *United States vs. Beaulieu*, 900 F.2d 1537,
1539-1540 (10th Cir.) *cert. denied,* 497 U.S. 1009 (1990); *United States vs.
Wallace*, 904 F.2d 603, 604-605 (11th Cir. 1990).

and reversed the judgment of the Court of Appeals. *See United States vs. Dunnigan,* 122 L. Ed. 2d 445, 113 S. Ct. 1111 (1993).

However, the guidelines caution that "in applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statement should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1, Commentary, Application Note 1. Several Courts of Appeals have interpreted this application note as instructing the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction."

*United States v. McKean*, 835 F. Supp. at 230 [citations omitted].  Rebecca did not commit perjury.  Rebecca was unaware that her husband had stored any pictures on his computer as he had promised her that he had deleted them, and the photos that were stored on Michael's computer were actually stored on the blue hard drive that he had hid from Rebecca.  At the time of her arrest when she was speaking with the Agents, she did not want to believe that her husband would have done this, or would have saved these pictures or sent them to anyone.  She thought that he had deleted them as he had told her that he had done so.  The statement regarding "when we bought the couch, there were other identical couches for sale" is a true statement, and again, she simply did not want to believe that her husband had done this and she was in a general, internal state of denial.  The Presentence report also states that Rebecca suggested that their computers were "hacked."

Rebecca indicates that this was not the word she used, and that when she was

asked a direct question by the Agents as to whether anyone had access to their

computers and internet, she indicated that that was possible.  Rebecca indicates

that when the Agents spoke about this subject of taking pictures, she indicated that

she did not take any pictures and did not want her husband, Michael, to take the

pictures.  It is denied that Rebecca Strausbaugh should be denied acceptance of

responsibility or that she obstructed justice or committed perjury.


## IV.   CONCLUSION

A sentence within applicable Guidelines range is not *per se* reasonable.  In

2009, the United States Supreme Court  held that the Sentencing "Guidelines are

not only *not mandatory* on sentencing courts; they are also not to be *presumed*

reasonable."  *Nelson v. United States*, 555 U.S. 350, 129 S. Ct. 890, 172 L. Ed. 2d

719 (2009).  In its *Per Curiam* opinion, the Court states,

> our cases do not allow a sentencing court to presume that a sentence
> within the applicable Guidelines range is reasonable. In *Rita* [551
> U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007] we said as much,
> in fairly explicit terms:  'We repeat that the presumption before us is
> an *appellate* court presumption. . . . [T]he sentencing court does not
> enjoy the benefit of a legal presumption that the Guidelines sentence
> should apply.'" 551 U.S., at 351, 127 S. Ct. 2456, 168 L. Ed. 2d 203.
> And in *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed.
> 2d 445 (2007), we reiterated that district judges, in considering how
> the various statutory sentencing factors apply to an individual

defendant, "may not presume that the Guidelines range is reasonable.'
Id., at 50, 128 S. Ct. 586, 169 L. Ed. 2d 445.

*Nelson*, 555 U.S. at 352.  In the instant case, after considering all the § 3553

factors, a sentence within the Guidelines would be unreasonable.  For all of the

foregoing reasons, Defendant, Rebecca Strausbaugh, respectfully submits that the

enhancements suggested by the Probation Department are excessive.  A downward

departure and/or a variance based on the battered woman syndrome and her

subservience to her husband, and her personal history and characteristics, is within

this Honorable Court's discretion and will still promote respect for the law,

provide just punishment, afford adequate deterrence and protect the public from

further crimes of the defendant.

<div style="margin-left:40%">

Respectfully submitted,

KILLIAN & GEPHART, LLP

</div>

Dated:  May 4, 2012          s/ Terrence J. McGowan
                             Terrence J. McGowan, Esquire
                             Attorney I.D. #39129
                             218 Pine Street
                             P. O. Box 886
                             Harrisburg, PA  17108-0886
                             (717) 232-1851

                             Attorney for Defendant Rebecca
                             Strausbaugh

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:11-CR-096 |
| | : | |
| v. | : | (Judge Caldwell) |
| | : | |
| REBECCA STRAUSBAUGH | : | (ELECTRONICALLY FILED) |

## CERTIFICATE OF SERVICE

I, Terrence J. McGowan, hereby certify that on this 4th day of May, 2012, a true and correct copy of the foregoing Sentencing Memorandum was served upon the parties listed below by the Middle District Court's electronic filing system addressed as follows:

Daryl Bloom, Esquire
Assistant U.S. Attorney
228 Walnut Street
Harrisburg, PA  17108
Daryl.Bloom@usdoj.gov


s/ Terrence J. McGowan
Terrence J. McGowan, Esquire
Attorney I.D. #39129
218 Pine Street
P. O. Box 886
Harrisburg, PA  17108-0886
(717) 232-1851
Attorney for Defendant Rebecca Strausbaugh